**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON COLLURA,** | : | |
| *Plaintiff,* | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 11-5637** |
| **DISCIPLINARY BOARD OF THE** | : | |
| **SUPREME COURT OF** | : | |
| **PENNSYLVANIA,** *et al.,* | : | |
| *Defendants*. | : | |
| | : | |

PRATTER, J.                                                                 AUGUST 20, 2013

## MEMORANDUM

Plaintiff Jason Collura brings this lawsuit against Defendants Mark Maguire, the

Disciplinary Board of the Supreme Court of Pennsylvania ("Board"), Donna Snyder, and Paul

Burgoyne alleging, primarily, violations of his constitutional rights. Mr. Maguire has moved to

dismiss Mr. Collura's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for

failure to state a claim upon which relief may be granted.[1] The Board, Ms. Snyder, and Mr.

Burgoyne have also moved to dismiss[2] Mr. Collura's Complaint pursuant to Rule 12(b)(1), for

lack of subject matter jurisdiction, and pursuant to Rule 12(b)(6), for failure to state a claim upon

which relief may be granted. For the following reasons, the Court grants both defense motions. [3]

---

[1] Mr. Maguire also moved to dismiss Mr. Collura's Amended Complaint under Rule 12(b)(5), for
insufficient service of process. Because Mr. Collura has failed to state a claim, however, the Court will
not address the service issue.

[2] Alternatively, the Board, Ms. Snyder, and Mr. Burgoyne move for summary judgment pursuant to
Federal Rule of Civil Procedure 56(a). In deciding the issues raised by the motions, the Court has only
looked to the Amended Complaint and matters of public record. Thus, the Court has not converted the
motion to one for summary judgment.

[3] Mr. Collura also filed a motion for summary judgment; the Court stayed proceedings related to that
motion while the motions to dismiss were pending. Because of the Court's rulings on the motion to
dismiss, the stayed summary judgment motion is now denied.

# I.    FACTUAL & PROCEDURAL BACKGROUND

Mr. Collura's claims arise from proceedings in two related lawsuits (hereinafter the "First Lawsuit" and the "Second Lawsuit") that he filed against the City of Philadelphia.  Mr. Collura alleges that Mark Maguire, who is the Assistant City Solicitor who represented the City in each of these lawsuits, violated Mr. Collura's constitutional rights by making false statements regarding Mr. Collura's criminal record during proceedings in those lawsuits.

In the First Lawsuit, which Mr. Collura initiated on February 15, 2008, Mr. Collura challenged a policy of the Independence Branch of the Philadelphia Free Library to "group[] people by race in regards to seating in the public library."  Am. Compl. ¶ 12.  Mr. Collura alleges that during a hearing on May 1, 2008, Mr. Maguire stated that Mr. Collura had been "arrested and convicted of . . .  harassment" even though Mr. Maguire "saw and knew" that Mr. Collura had no such conviction.  *Id*. ¶ 15.  Mr. Collura claims that immediately after Mr. Maguire made this statement, Mr. Collura "stated right after that, that it was incorrect."  *Id*.  Later, during the same hearing, Mr. Maguire stated that Mr. Collura had pled guilty to "all" criminal charges levied against him, to which Mr. Collura responded "that was a lie."  *Id*.  Mr. Collura claims that these statements of Mr. Maguire caused him to feel "physical effects of distress," severe "mental and emotional distress," and "impairment of reputation."  *Id*.

Following the May 1, 2008 hearing, on May 10, 2008, Mr. Collura wrote a letter to Mr. Maguire accusing him of making a "multitude of false statements of fact at the hearing" and announcing his intention to "take action" based on this "retaliation" and violation of "federal rights."  *Id*. ¶ 16 and Ex. A.  Later, on February 11, 2009, while the Second Lawsuit was pending, Mr. Collura wrote to Shelley Smith, the Philadelphia City Solicitor, and threatened to sue the City based on Mr. Maguire's alleged "false statement of fact" made at the May 1, 2008

hearing.  *Id*. ¶ 16 & Ex. B.  In this letter, Mr. Collura wrote that he perceived a "practice" by the

City Solicitor of allowing solicitors to make false statements based on Mr. Maguire doing it

"twice in one hearing with one person in one case."  *Id*. Ex. B.  The First Lawsuit ultimately was

resolved by agreement and dismissed on October 10, 2008, following entry of a consent order.

*Collura v. City of Phila.*, Docket No. 21, 2:08-cv-746 (E.D. Pa. 2008).

In the Second Lawsuit, which Mr. Collura initiated on August 19, 2008, Mr. Collura

alleged that the City retaliated against him for filing the First Lawsuit by "trying to imprison him

and banning him" for six months from the Independence Branch of the Philadelphia Library.

Am. Compl. ¶¶ 12, 17.  A bench trial was held on September 10, 2009.  *Id*. ¶ 17.  Mr. Collura

alleges that during the trial, Mr. Maguire asked him, "[S]o you don't believe that it was a threat

when you were convicted of unlawful use of the computer, terroristic threats and harassment?"

*Id*. ¶ 17.  In response, Mr. Collura testified that Mr. Maguire made that assertion knowing "that

factually it's incorrect" with respect to Mr. Collura's criminal record.  *Id*. ¶ 17.  Mr. Collura

alleges that Mr. Maguire's conduct at the bench trial caused him to suffer "physical effects of

distress."  *Id*. ¶ 17.  On August 9, 2010, the Court entered judgment in the City's favor in the

Second Lawsuit.  *Collura v. City of Phila.*, No. 08-3880, 2010 WL 3122863 (E.D. Pa. Aug. 9,

2010).  Mr. Collura appealed this ruling to the Court of Appeals for the Third Circuit.  The

verdict was affirmed.  *Collura v. City of Phila.*, 421 Fed. Appx. 256, 258 (3d Cir. 2011).

In April 2010, Mr. Collura filed a complaint with the Disciplinary Board of the Supreme

Court of Pennsylvania about the allegedly false statements made by Mr. Maguire during the

bench trial in the Second Lawsuit.  *Id*. ¶ 26.  Defendant Donna M. Snyder, an attorney with the

Office of Disciplinary Counsel ("ODC"), investigated the complaint.  *Id*. ¶ 26.  Mr. Collura

claims that Ms. Snyder explained to him that "Maguire never said Plaintiff was convicted of the

above crime he was not convicted of." *Id.* ¶ 26. Mr. Collura claims that he received a letter from Ms. Snyder informing him that no further action would be taken on his complaint, *id.* ¶ 26, and "mandat[ing]" him not to discuss the fact that he filed a complaint with the Board. *Id.* ¶ 34. Mr. Collura asserts that after receiving Ms. Snyder's letter, he then wrote to Defendant Paul Burgoyne, the Board's Deputy Chief Disciplinary Counsel, but received no response from Mr. Burgoyne. *Id.* ¶ 27.

Mr. Collura's Amended Complaint here raises the following claims against Mr. Maguire: (1) a § 1983 claim for "unlawful retaliation" in violation of the First Amendment; (2) a Due Process claim under the Fourteenth Amendment for violation of his "federal constitutionally protected liberty interest" in his reputation; (3) an Equal Protection claim for "affecting federal proceedings that are suppose[sic] to be fair"; and (4) a Due Process claim for "affecting federal proceedings that are suppose[sic] to be fair." *Id.* ¶¶ 15, 17.

For Mr. Maguire's alleged violations, Mr. Collura seeks the following relief against Mr. Mr. Maguire in his individual capacity: $35,000 in compensatory damages, $100,000 in punitive damages, and $1 in nominal damages. *Id.* Prayer for Relief §§ (e)-(g). In Mr. Maguire's official capacity, Mr. Collura seeks $1 compensatory damages, $1 nominal damages, and prospective relief. *Id.* ¶ 39; Prayer for Relief. Mr. Collura also seeks a declaration that Mr. Maguire violated Pennsylvania Rules of Professional Conduct 3.3(a)(1), 8.4(c), and 8.4(d) and Mr. Collura's federal Constitutional rights, along with a declaration of the unconstitutionality of the City's "custom and practice of having their lawyers falsely claim plaintiffs have been convicted of a crime." *Id.* Prayer for Relief § (b)(2)-(4). Further, Mr. Collura seeks an order disbarring Mr. Maguire from practicing law before all federal courts in Pennsylvania, and a permanent

injection "barring the City's illegal practice of lawyers declaring convictions on plaintiffs who sue them that don't exist." *Id.* Prayer for Relief § (c)(1)-(2).

Mr. Collura also raises the following claims against the Board, Donna M. Snyder, and Paul Burgoyne: (1) violation of procedural due process pursuant to the Due Process Clause of the Fifth Amendment and Fourteenth Amendment; (2) violation of substantive due process pursuant to the Due Process Clause of the Fifth and Fourteenth Amendment; (3) violation of Art. I, § 1 of the Pennsylvania Constitution; (4) challenge to the validity and the Board's application of Pennsylvania Rules of Professional Conduct ("RPC") 3.3(a)(1), 8.4(c), and 8.4(d)[4] on vagueness and overbreadth grounds; (5) challenge to the validity of Pennsylvania Rules of Disciplinary Enforcement ("RDE") 209 and 402[5] under the First Amendment and Art. I § 7 of the Pennsylvania Constitution. *Id.* ¶¶ 32-34.

With respect to Mr. Collura's allegations against the Board, Mr. Collura seeks a declaration that the Board violated the Federal and Pennsylvania Constitutions and his federal and state constitutional rights, misapplied RPC 3.3(a)(1), 8.4(c), and 8.4(d), and that RDE 209 and 402 violate the Federal and Pennsylvania Constitutions. *Id.* Prayer for Relief § (b)(5)-(7). Further, Mr. Collura seeks a "[s]trong verbal reprimand scolding" of the Board for "doing nothing" about his complaint. *Id.* Prayer for Relief § (d). Mr. Collura also seeks a permanent

---

[4] Under RPC 3.3(a)(1) and 8.4(c), lawyers must not make false statements or engage in dishonesty or fraud. Under RPC 8.4(d), lawyers must not "engage in conduct that is prejudicial to the administration of justice."

[5] RDE 209 provides that "[c]omplaints submitted to the Board or Disciplinary Counsel shall be confidential unless the matter results in the filing of formal charges," and that anyone testifying or communicating with the Board about disciplinary complaints "shall be immune from civil suit based upon such communication or testimony." At the time Mr. Collura complained to the Board about Mr. Maguire, RDE 209 immunity was contingent upon maintaining confidentiality, but that provision was revised in 2011 to eliminate that contingency.

RDE 402 generally provides that disciplinary proceedings are confidential until formal charges are filed.

injunction requiring the Board to review all complaints, set up an appeal system, cease the use or mention of RDE 209 and 402, cease requesting that complainants not disclose the fact that they have filed a grievance, and apply RPC 3.3(a)(1), 8.4(c), and 8.4(d) whenever an attorney in court proceedings falsely asserts that a person has been convicted of a crime. *Id*. Prayer for Relief § (c)(3)-(5).

Mr. Collura seeks a declaration that Ms. Snyder and Mr. Burgoyne violated his "federal and state constitutional rights," *id*. Prayer for Relief § (b)(5), and a "strong verbal reprimand" against them for "doing nothing" about his complaint. *Id*. Prayer for Relief § (d). Mr. Collura seeks monetary damages against these Defendants in their individual capacities, *id*. Prayer for Relief § (e)-(g), as well as unspecified "prospective" relief from these Defendants in their official capacities, *id*. ¶ 40.

Mr. Collura is proceeding *pro se*, and the Court will construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). The Court will in turn address each of Mr. Collura's constitutional claims.

## II.    STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), when considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation. *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion to dismiss, the Court must distinguish between facial attacks and factual attacks. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

Among other prerequisites required to establish subject matter jurisdiction, "'[a]bsent Article III standing, a federal court does not have subject matter jurisdiction to address a

plaintiff's claims, and they must be dismissed.'" *McCray v. Fidelity Nat. Title Ins. Co*., 682 F.3d 229, 243 (3d Cir. 2012) (quoting *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir. 2006)). A dismissal for lack of standing is effectively the same as a dismissal for failure to state a claim. *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011). In evaluating whether a plaintiff has adequately pled the elements of standing, the Court applies the same standard for reviewing a complaint pursuant to Rule 12(b)(6). *Id.* at 73-74. Therefore, the Court must accept as true all material allegations set forth in the Complaint, and construe the allegations in favor of the non-moving party. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. Although a complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, —— U.S. ——, ——, 131 S.Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a

complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and must view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. Thus, the Court need not accept "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

## III. DISCUSSION

### A. Claims against Mark Maguire[6]

Mr. Collura brings his claims against Mr. Maguire pursuant to 42 U.S.C. § 1983, the federal civil rights statute that authorizes a cause of action for those who challenge a state or municipality's "deprivation of any rights . . . secured by the Constitution." Section 1983 is not itself a source of substantive rights, "but a method for vindicating federal rights elsewhere conferred. . . ." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Neumeyer v. Beard*, 421 F.3d 210, 213 (3d Cir. 2005). In order to state a *prima facie* claim against an individual under § 1983, a plaintiff must show (1) that the defendant deprived him or her of a federal right; and (2) that in doing so, the defendant was acting under color of state or territorial law. *Edwards v. City of Phila.*, 860 F.2d 568, 573 (3d Cir. 1988) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

All of Mr. Collura's claims against Mr. Maguire stem from Mr. Maguire's statements in the course of two previous lawsuits that Mr. Collura was previously convicted of harassment.

---

[6] Because all of the allegedly offending statements made by Mr. Maguire occurred in the course of litigation, Mr. Maguire argues that the litigation privilege protects him from liability. Pennsylvania's litigation privilege grants immunity from tort liability for statements made in the regular course of litigation, providing that the statements are pertinent and material to the proceeding. *See Parker v. Learn the Skills Corp.*, No. Civ. A. 05-2752, 2006 WL 759693, at *5 (E.D. Pa. Mar. 23, 2006). Mr. Maguire's statements would clearly fall within the intended scope of the litigation privilege, as they were made during the course of litigation and were relevant to the proceedings in which they were made. However, whether that immunity applies to bar federal claims under § 1983 is not settled and has not been addressed by the Third Circuit Court of Appeals. *See, e.g., Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (quoting *Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law.") in support of its holding that California's litigation privilege did not bar plaintiff's § 1983 claim); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action."). *But see Williams v. BASF Catalysts LLC*, No. 11-1754, 2012 WL 6204182, at *18 (D.N.J. Dec. 12, 2012) ("In New Jersey, the litigation privilege has been recognized to have firm roots in the common law dating back to 1871, and as such protects attorneys and other participants in judicial proceedings from a host of tort-related claims. It has been applied broadly, extended even to shield attorneys from claims seeking redress for constitutional violations under 42 U.S.C. § 1983.") (internal citations omitted). Since the Court is able to grant Mr. Maguire's motion without relying on the litigation privilege, it need not weigh in on the privilege's applicability to § 1983 claims.

Specifically, Mr. Collura asserts that Mr. Maguire's statements represented unlawful retaliation against his First Amendment-protected petitioning activities, that they violated his due process rights by injuring his reputation, and that they violated his due process and equal protection rights by interfering with the fairness of the two court proceedings during which the statements were supposedly uttered. None of these claims can survive Mr. Maguire's motion to dismiss.

### 1. *First Amendment Retaliation*

To state a *prima facie* First Amendment retaliation claim under §1983, a plaintiff must allege that (1) the plaintiff had engaged in conduct that is protected under the First Amendment; (2) the state-actor defendant took adverse action against the plaintiff "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) there was a causal connection between the plaintiff's protected activity and the defendant's adverse action, *i.e.*, the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (internal citations and quotations omitted). While Mr. Collura's filing of two earlier lawsuits would fall within the category of petitioning activities protected by the First Amendment, Mr. Maguire's statements were not adverse actions sufficient to deter a person of ordinary firmness from exercising his constitutional rights, nor has Mr. Collura sufficiently pleaded that they were retaliatory, as opposed to simply actions, malicious or not, taken in the ordinary course of prior litigation.

It is true, as Mr. Collura points out, that the bar for what qualifies as an adverse action is a low one. As the Supreme Court has recognized, "even an act of retaliation as trivial as failing to hold birthday party for a public employee . . . when intended to punish her for exercising her free speech rights" may suffice to support a First Amendment retaliation claim. *See Rutan v. Republican Party*, 497 U.S. 62, 76 n.8 (1990). Even so, "*de minimis* or trivial acts do not

amount to actionable adverse actions." *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 569 (E.D. Pa. 2004) (citing *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2000)). For instance, "courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Brennan*, 350 F.3d at 419. *See also Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (holding that charging the prisoner-plaintiff with a misconduct that was later dismissed, allegedly in retaliation for filing a grievance, did not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights). Here, on a few occasions in the course of prior litigation and in the context of accurately reciting other similar criminal charges, Mr. Maguire allegedly falsely stated that Mr. Collura had been convicted of harassment. Each time, Mr. Collura had the opportunity to, and did, correct the avowed misstatement. Such incidents, while perhaps upsetting, do not rise to the level of a constitutional violation.

In *Ober v. Brown*, 105 Fed. Appx. 345 (3d Cir. 2004), the Third Circuit Court of Appeals upheld the district court's dismissal of a strikingly similar First Amendment retaliation suit because the allegations in the complaint did not support a connection between the alleged misconduct and a retaliatory purpose. In that case, the plaintiff claimed that in an earlier proceeding, defendant-attorneys had engaged in misconduct aimed at punishing him for filing suit, including presenting false testimony, unlawfully acquiring irrelevant personal information to intimidate him, and other similar misconduct. *Id.* at 346. The court held that the plaintiff presented inadequate factual and legal support to suggest that the actions were retaliatory, "as opposed to the actions merely taken for the purpose of defending a lawsuit." *Id.* at 347. The appropriate forum for remedying this misconduct, according to the court, was in the underlying

lawsuit, not a later suit raising constitutional claims.  *Id.*  Here, apart from allegations that the

misstatements occurred during litigation and conclusory allegations connecting the

misstatements to Mr. Collura's petitioning activities, Mr. Collura has not sufficiently pleaded

facts that would suggest that the misstatements, even if intentional and distasteful, were anything

other than actions taken in the normal course of defending a lawsuit.[7]

    *2.  Fourteenth Amendment Reputation Claim*

Mr. Collura also claims that Mr. Maguire's false statements damaged his

"constitutionally protected liberty interest" in his reputation.  The Supreme Court has made clear,

however, that the Fourteenth Amendment does not protect against damage to reputation alone.

*See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (reaffirming that "injury to reputation by itself

[is] not a 'liberty' interest protected by the Fourteenth Amendment").  For damage to reputation

to be recoverable, it must be accompanied by some other constitutional violation.  Here, although

Mr. Collura argues that the injuries to his reputation led to his physical distress, he still has not

pleaded that Mr. Maguire did anything other than, at the most, defame him and seek to injure his

reputation.  Thus, Mr. Collura's Fourteenth Amendment reputation claim must be dismissed.

    *3.  Equal Protection and Due Process claims*

Mr. Collura also claims that his equal protection and due process rights have been

violated, asserting that Mr. Maguire's false statements about his prior convictions "affect[ed]

federal proceedings that are suppose[d] to be fair."  To prevail on a § 1983 claim for a denial of

equal protection, a plaintiff must at least show that the treatment he or she received was different

from that received by others who were similarly situated.  *Andrews v. City of Phila.*, 895 F.2d

1469, 1478 (3d Cir. 1990) (citing *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1

---

[7] Indeed, Mr. Maguire's conduct does not seem to have deterred Mr. Collura from pursuing his First
Amendment rights to petition the Court.  Since Mr. Maguire allegedly first misstated Mr. Collura's
criminal history, Mr. Collura has filed at least two more lawsuits against the City and/or its employees.

(3d Cir. 1980)).  A plaintiff's "general accusations and the invocation of the Equal Protection Clause are not enough" to prevail on a § 1983 claim.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  Thus, to support a claim for violation of equal protection rights, "[a] plaintiff must at least allege and identify the actual existence of similarly situated persons who have been treated differently and that the government has singled out plaintiff alone for different treatment."  *Marcavage v. City of Phila.*, 2006 U.S. Dist. LEXIS 55643, at *18 (E.D. Pa. Aug. 3, 2006) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Mr. Collura has failed to identify any similarly situated individual whom Mr. Maguire, in his official capacity, has treated differently.  Indeed, he affirmatively alleges that the City treated all *pro se* litigants unfairly.  Mr. Collura alleges only that "Maguire's conduct also affected Plaintiff's Equal Protection . . .  claims of the Federal Constitution by affecting federal proceedings that are suppose[d] to be fair . . ."  Am. Compl. ¶ 15.  Accordingly, Mr. Collura's Equal Protection claim amounts to mere "general accusations" which are insufficient to prevail on a § 1983 claim.

To state a substantive due process claim, the plaintiff must allege that he was deprived of a fundamental right, and that the government conduct at issue was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *See Kaucher v. County of Bucks,* 455 F.3d 418, 425 (3d Cir. 2006) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8 (1998)).  Even assuming Mr. Collura had pleaded that he was deprived of a substantive right by Mr. Maguire's conduct, nothing about the alleged misstatements, particularly in the context in which they occurred, shocks the conscience.  Each time a misstatement was made Mr. Collura had a full opportunity, of which he availed himself, to dispute and correct the misstatement on the record.  Moreover, given that Mr. Collura was previously convicted of

terroristic threats, a crime with elements similar to, and, indeed, more serious than the elements of the crime of harassment, the misstatements about Mr. Collura's criminal record are even less "shocking." *Compare* 18 Pa. C.S.A. § 2706(a) (defining the crime of terroristic threats as making "a threat to: (1) commit any crime of violence with intent to terrorize another; (2) cause evacuation of a building, place of assembly or facility of public transportation; or (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience") *with* 18 Pa. C.S.A. § 2709(a) (describing the crime of harassment as when "with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same . . . [or] (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures"); *see also Com. v. Beckwith*, 674 A.2d 276, 279 (Pa. Super. 1996) (noting that the crime of harassment merged with the crime of terroristic threats for sentencing purposes).

To state a claim for violation of procedural due process rights, a plaintiff must allege: (1) that he or she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available did not provide the plaintiff "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). Mr. Collura has failed to plead a violation of his procedural due process rights because he has not pleaded that Mr. Maguire's statements deprived him of due process of law. Although Mr. Collura contends that the statements had negative effects on the prior lawsuits, the records in those suits belies this contention. Indeed, the First Lawsuit ended in a consent decree, which granted Mr. Collura the relief he sought in that case. *See Collura v. City of Phila.*, Docket No. 21, 2:08-cv-746 (E.D. Pa. 2008). The Second Lawsuit, although it was not ultimately

decided in Mr. Collura's favor, resulted in an opinion upheld by an appeals court, in which the district court accurately described Mr. Collura's criminal record. *Collura v. City of Phila.*, No. 08-3880, 2010 WL 3122863, at *2 (E.D. Pa. Aug. 9, 2010). Thus, Mr. Collura has not and cannot show that Mr. Maguire's misstatements concerning his criminal history had any effect of depriving him of his due process rights.

### 4. Monell *Claim*

Mr. Collura also appears to advance a *Monell* claim related to Mr. Maguire's conduct. A local government "may not be sued under § 1983 for an injury [that has been] inflicted solely by its employees or agents." *Brown v. Pittsburgh,* 586 F.3d 263, 292 (3d Cir. 2009) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978)). "In other words, a plaintiff cannot rely upon a theory of respondeat superior to impose § 1983 liability upon a municipality." *Id.* "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Thus, the analysis of *Monell* claims focuses on whether the policy or custom was actually the "moving force" behind any constitutional violations that may have been perpetrated by a municipality's employees. *Canton v. Harris,* 489 U.S. 378, 389 (1989) (citing *Polk Cty. v. Dodson,* 454 U.S. 312, 326 (1981); *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484 (1986)).

Neither the City nor Shelley Smith (the City employee Mr. Collura alleges is a policymaker for purposes of his *Monell* claim) are named as defendants in this lawsuit. Even so, in the absence of any underlying constitutional violations, it certainly cannot be said that the City had a policy or practice of committing constitutional violations. Thus, to the extent that Mr. Collura attempts to assert a *Monell* claim, that claim must be dismissed.

**B. Claims against the Disciplinary Board Defendants**

Mr. Collura challenges the Disciplinary Board Defendants' handling of his complaint against Mr. Maguire, the validity of various Rules of Professional Conduct and Disciplinary Enforcement, the sufficiency of disciplinary complaint processes, and the perceived ban on his ability to speak freely about the disciplinary complaints he files. Essentially, then, his claims can be divided into two types: challenges to rules governing attorney conduct and challenges to the process employed in handling his complaint.

To the extent Mr. Collura attempts to bring claims against the Disciplinary Board itself, such claims are barred by the Eleventh Amendment. Under the Eleventh Amendment, states and state entities are entitled to immunity from suit in federal court. *See* U.S. Const. Amend. 11. There are three exceptions to Eleventh Amendment immunity which will allow a suit against the state: (1) congressional abrogation; (2) state waiver; and (3) suits against individual state officers for prospective relief to end ongoing violations of federal law. *See Law Offices of Lucas v. Disciplinary Bd. of Supreme Ct. of Pa.*, 128 Fed. Appx. 235, 237 (3d Cir. 2005) (citing *MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001)). Because it operates under the auspices of the United Judicial System of Pennsylvania, the Board is an arm of the Commonwealth, and because none of the exceptions apply,[8] it is immune to suit. *See id.*; *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009), *aff'd* 380 Fed. Appx. 155 (3d Cir. 2010). *See also Callahan v. City of Philadelphia,* 207 F.3d 668, 672 (3d Cir. 2000) ("All courts and agencies of the unified judicial system. . . are part of 'Commonwealth government' and thus are state rather than local agencies."). Mr. Collura argues that because the Board is primarily funded by Philadelphia County, it is not a state entity. However, he provides

---

[8] Congress has not created an exception, the Commonwealth has not waived immunity, and the Board is not an individual officer subject to the *Ex Parte Young*, 209 U.S. 123 (1908), exception.

no evidence of this alleged funding, nor does he include any allegations relating to funding in his Amended Complaint. Even if he had, and even if the Court were obliged to credit such allegations, Mr. Collura's argument ignores the referenced Third Circuit Court of Appeals case law discussing the Eleventh Amendment immunity of Pennsylvania courts and their agencies. Therefore, Mr. Collura's claims against the Board must be dismissed.[9]

In addition to the Board, Mr. Collura also sues two Board employees, Donna Snyder and Paul Burgoyne. Article III, § 2, of the Constitution limits the federal judicial power to the adjudication of "Cases" and "Controversies." "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Berg v. Obama,* 586 F.3d 234, 242 (3d Cir. 2009) (internal quotation marks omitted). The "irreducible constitutional minimum" of Article III standing entails three elements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Those constitutional standing requirements are: "(1) an 'injury in fact'; (2) 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court'; and (3) a showing that it 'be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *N.J. Physicians, Inc. v. President of United States,* 653 F.3d 234, 238 (3d Cir. 2011) (quoting *Lujan,* 504 U.S. at 560–61).

> To establish injury in fact, a plaintiff must allege an injury that is both (1) 'concrete and particularized' and (2) 'actual or imminent, not conjectural or hypothetical.' Each of these definitional strands imposes unique constitutional requirements. An injury is "concrete" if it is "real,", or "distinct and palpable, as opposed to merely abstract," while an injury is sufficiently "particularized" if it "affect[s] the plaintiff in a personal and individual way." The second requirement—"actual or imminent, not conjectural or hypothetical"—makes plain that if a harm is not presently or "actual[ly]" occurring, the

---

[9] The Court notes that even if the Board was not entitled to Eleventh Amendment immunity, the claims against it would still be subject to dismissal for the same reasons that the claims against the Board employees fail.

alleged future injury must be sufficiently "imminent." Imminence is "somewhat elastic," but requires, at the very least, that the plaintiffs "demonstrate a realistic danger of sustaining a direct injury." In other words, there must be a realistic chance—or a genuine probability—that a future injury will occur in order for that injury to be sufficiently imminent.

*Id.* at 238 (citations omitted).

To the extent that he attempts to challenge various Rules of Professional Conduct and the Rules of Disciplinary Enforcement in his suit against Ms. Snyder and Mr. Burgoyne, Mr. Collura clearly does not have standing. The Rules only apply to attorneys and, therefore, do not and could not apply to Mr. Collura, who is not an attorney and does not allege that he is likely to be one at some concrete point in the future. Therefore, Mr. Collura lacks standing to challenge them. *See Thompson v. Mattleman, Greenberg, Shmerelson, Wineroth & Miller*, No. Civ. A. 93-2290, 1995 WL 334267 (E.D. Pa. June 2, 1995) (dismissing First Amendment challenge to some of the same Rules Mr. Collura challenges—those dealing with the confidentiality of disciplinary complaints—because plaintiff was not an attorney and thus had not been and could never be subject to sanction by the Board); RDE 201 (outlining the jurisdiction of the Board as extending to attorneys and former attorneys). *See also generally* Pennsylvania Rules of Professional Conduct (making clear that the conduct governed is the conduct of lawyers). Despite Mr. Collura's protests that breaching confidentiality had consequences for him, such as a refusal of the Board to properly investigate his complaints, he does not point to any rules that support this conclusion, nor does he allege that the Board Defendants even threatened any such consequences.[10] His subjective fears, even coupled with a request from the Board Defendants to

---

[10] At the time Mr. Collura complained, the most he could complain about would be a lack of immunity from civil suits if he breached confidentiality. The current version of RDE 209(a) does not make that distinction. At no time did the Rules state that a breach in confidentiality would lead to any penalties for complainants.

keep his complaint confidential, are not enough to amount to an injury that might vest him with standing.

Mr. Collura also argues that he may bring his claims concerning the Rules on behalf of unspecified third parties. "Litigants may bring an action on behalf of third parties only in limited circumstances, when: (1) the litigant has suffered an injury in fact, giving him a sufficiently concrete interest in the outcome of the issue; (2) the litigant has a close relation to the third party; and (3) there exists some hindrance to the third party's ability to protect his own interest." *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 189 n.4 (3d Cir. 2006). None of these three circumstances apply here. As already discussed, Mr. Collura has suffered no injury in fact relating to the Rules, he has not alleged any close relation to a third party who has been or will be injured by them, and he has not alleged that any third parties are unable to protect their own interests.

As for Mr. Collura's claims that his constitutional rights were violated by the Board's handling of his complaint, Mr. Collura has no right to any particular outcome or procedure beyond, perhaps, the ability to file a complaint, which he was, according to his own Amended Complaint, permitted to do. *See Ginsburg v. Stern*, 125 F. Supp. 596 (W.D. Pa. 1954). In *Ginsburg*, the court dismissed civil rights claims, including an equal protection challenge, brought by a plaintiff who complained about an attorney's misconduct and the subsequent refusal of court personnel to file a petition seeking to have the attorney disbarred, holding that the plaintiff had no right to anything more than making a complaint. *Id.* at 603.

The Tenth Circuit Court of Appeals in *Doyle v. OK Bar Assoc.*, 998 F.2d 1559 (10th Cir. 1993), addressed and upheld dismissal of claims similar to those brought by Mr. Collura. In *Doyle*, the plaintiff had filed a grievance against an attorney who had represented the plaintiff's

ex-wife in a divorce proceeding. *Id.* at 1562. When the Office of General Counsel of the Oklahoma Bar Association and the state bar's Professional Responsibility Committee failed to act on the plaintiff's grievance, he filed a § 1983 claim in federal court, claiming that his constitutional rights were violated by the defendants' failure to meaningfully investigate his grievance and failure to sanction an attorney who had made misrepresentations in a previous proceeding. *Id.* The district court dismissed the complaint, and the Tenth Circuit Court of Appeals affirmed, holding that, just as a private citizen has no federal right to the prosecution of another, a complainant has no federal right to the discipline of an attorney. *Id.* at 1566-67. Moreover, the *Doyle* court held that even if the plaintiff had standing, he had no substantive due process right to an investigation of his complaint of misconduct, let alone to a particular outcome, nor was he deprived of any liberty or property interest sufficient to support a procedural due process claim when the defendants failed to investigate his complaint. *Id*. at 1568-70.

Here, again, Mr. Collura has not suffered an injury at the hands of Ms. Snyder and Mr. Burgoyne. He had no right to any specific action in response to his misconduct complaint, and therefore has no standing to pursue a claim based on the way his complaint was handled. Thus, Mr. Collura's claims, to the extent they seek redress with respect to the handling of his complaint regarding Mr. Maguire, must and will be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, the Motions to Dismiss will be granted, and all claims against all Defendants will be dismissed with prejudice.  An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE